UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| NELLY GUEVARA A# 205 515 889, )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>SCOTTY MAPLES in his official capacity as )<br>Jailer of Clark County Detention Center, )<br>SAMUEL OLSON Field Office Director for ICE )<br>Chicago Field Office, )<br>TODD LYONS in his official capacity as Acting )<br>Director of Immigration and Customs )<br>Enforcement, )<br>KRISTI NOEM Secretary of Homeland Security, )<br>PAMELA BONDI U.S. Attorney General, )<br>)<br>Respondents. ) | No. 4:26-cv-00040-SEB-KMB |

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS
AND DIRECTING IMMEDIATE RELEASE**

Petitioner Nelly Guevara is a noncitizen who has been subject to a final order of removal since 2016. The government placed her on an order of supervision ("OSUP") in 2012. Thirteen years later, on February 9, 2026, Immigration and Customs Enforcement ("ICE") agents arrested Ms. Guevara. She is currently detained at the Clark County Detention Center. Ms. Guevara's petition for a writ of habeas corpus seeks immediate release from detention based on Respondents' failure to abide by their own process for revoking her order of supervision. For the reasons described below, the Court **grants** Ms. Guevara's petition.

**I. Background**

Ms. Guevara, a Honduran citizen, entered the United States in 2012. Dkt. 7-1 at 8. She was found to be inadmissible under 28 U.S.C. § 1225(b)(1)(7)(A)(i)(I) as lacking the proper entry documents, and an Order of Removal was signed on July 29, 2012. Dkt. 7-1 at 2. She was issued

1

an Order of Supervision (OSUP) on July 31, 2012. Dkt. 1-2. She obtained work authorization to legally work in the United States in 2024, though the authorization expired in July 2025. Dkt. 1-4. Ms. Guevara contends that she has no criminal convictions and has complied with all ICE reporting requirements. Dkt. 1 ¶ 30; *see also* Dkt. 7-1 at 8 (confirming "no criminal history in the United States"). The respondents do not contend that Ms. Guevara was noncompliant with reporting requirements.

On February 9, 2026, Ms. Guevara reported for an appointment at the Louisville, Kentucky, ICE office and was taken into custody. Dkt. 7-1 at 8. She was initially detained at the Clark County Jail and is now detained at the Clinton County Detention Center. Dkt. 7-3.

Also on February 9, an I-200 Warrant for Arrest of Alien was issued and served on Ms. Guevara. Dkt. 7-1 at 3. She was also issued a Form I-296 Notice to Alien Ordered Removed/Departure Verification Form, stating that she had been found inadmissible as an arriving alien pursuant to section 235(b)(1) or 240 of the Immigration and Nationality Act (INA), and is prohibited from entering or attempting to enter the United States for a period of five years from the date of her departure. *Id.* at 1.

The same day, a Notice of Revocation of Release issued from the Chicago, Illinois, Office of Enforcement and Removal Operations, stating that Ms. Guevara's release has been revoked pursuant to 8 C.F.R. § 241.4(*l*) because enforcement of the removal order is appropriate and ICE is seeking a travel document to effect her expeditious removal to Honduras. Dkt. 7-1 at 4–5. An ICE officer certified that he served the notice on Ms. Guevara, who refused to sign the notice. *Id.* at 5. The Notice was signed by Raymond Hernandez as "Acting Field Office Director." *Id.* The federal respondents submitted a declaration by Mr. Hernandez in which he states that he has been the Acting Deputy Field Office Director for the Chicago office since January 4, 2026. Dkt. 12-1

¶ 1. Mr. Hernandez also states that, because Acting Field Office Director Matthew Putra was out of town, he "assumed the duties of Acting Field Office Director from February 6, 2025 [*sic*], until February 10, 2026." *Id.* ¶ 3. He does not state whether anyone delegated those duties to him.

ICE Officer Rosado completed a form indicating that he conducted an initial informal interview of Ms. Guevara on February 9, 2026, to afford her an opportunity to respond to the reasons for revocation of her order of supervision stated in the notification letter. Dkt. 7-1 at 6.

## II. Legal Standard

A federal court may issue a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Here, the contention is that Ms. Guevara's detention is unlawful because the respondent failed to follow applicable regulations and illegally revoked her OSUP.

In general, when a noncitizen is ordered removed, the Attorney General is to remove the noncitizen within 90 days. 8 U.S.C. § 1231(a)(1). "If the alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General." 8 U.S.C. § 1231(a)(3). Noncitizens who have been ordered removed for certain specified reasons may be released, subject to supervision, at the Attorney General's discretion. 8 U.S.C. § 1231(a)(6). Federal regulations specify that ICE may release individuals and place them on an OSUP only if they "demonstrate[ ] to the satisfaction of the Attorney General . . . that his or her release will not pose a danger to the community or to the safety of other persons or to property or a significant risk of flight pending such alien's removal." 8 C.F.R. § 241.4(d)(1); *see also id*. § 241.4(e)(6).

Federal regulations prescribe procedures for revoking an OSUP and for returning a removable noncitizen to custody. Discretionary revocation of release for reasons other than

3

violation of conditions of release is governed by 8 C.F.R. § 241.4(*l*)(2).[1] This is the regulation that controls here. It differs from § 241.4(*l*)(1) in that it specifically identifies who may revoke release and on what basis. Specifically, it grants discretion to revoke release to an Executive Associate Commissioner or, in more limited circumstances, to a District Director. The District Director may act only if, in his or her opinion, "revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner."

Section 241.4(*l*)(2) specifies that either official may revoke release only if, in the official's opinion:

(i) The purposes of release have been served;

(ii) The alien violates any condition of release;

(iii) It is appropriate to enforce a removal order or to commence removal proceedings against an alien; or

(iv) The conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate.

The Administrative Procedure Act requires federal courts to "hold unlawful and set aside agency action" that is found to be:

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(B) contrary to constitutional right, power, privilege, or immunity; [or]

(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right[.]

5 U.S.C. § 706(2). "[C]ourts have consistently demanded governmental compliance with administrative regulations designed to safeguard individual interests." *Martinez Camargo v. I.N.S.*, 282 F.3d 487, 491 (7th Cir. 2002); *see also United States ex rel. Accardi v. Shaughnessy*, 347 U.S.

---

[1] Neither party argues that Petitioner violated the conditions of her OSUP.

260, 267–68 (1954) ("We think the petition for habeas corpus charges the Attorney General with precisely what the regulations forbid him to do: dictating the Board's decision. [W]e object to the Board's alleged failure to exercise its own discretion, contrary to existing valid regulations."). ICE is "required to follow [its] own regulations . . . including those that govern exercises of an agency's discretion." *Zelaya Diaz v. Rosen*, 986 F.3d 687, 690 (7th Cir. 2021); *see also K.E.O. v. Woosley*, 2025 WL 2553394, at *3 (W.D. Ky. Sept. 4, 2025) ("ICE's failure to follow their own regulations violate the *Accardi* doctrine and K.E.O.'s procedural due process rights."); *N.A.L.R. v. Bondi, et al.*, Case No. 4:25-cv-00192-SEB-KMB, 2025 WL 2987239, at *3 (S.D. Ind. Oct. 23, 2025) (same).

### III. Analysis

#### A. Jurisdiction

Respondents argue that the Court lacks jurisdiction because Ms. Guevara is subject to a final order of removal. Under 8 U.S.C. § 1252(g), the Court does not have jurisdiction to hear challenges to the Attorney General's decision "to commence proceedings, adjudicate cases, or execute removal orders." The challenged action here, however, is the revocation of the OSUP without following the appropriate protocol, which is not enumerated in § 1252(g), so the Court has jurisdiction to hear this case. *See Jennings v. Rodriguez*, 138 S. Ct. 830, 840–41 (2018) (detention claims are not barred merely because they arise in the context of removal proceedings); *Reno v. American-Arab Anti-Discrimination Comm.,* 525 U.S. 471, 482 (1999) (adopting the narrow interpretation of § 1252(g) that it "applies only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'").

### B. Unlawfulness of Detention

Ms. Guevara contends that the revocation of her OSUP "stands in direct violation of the regulatory framework governing OSUP revocation." As Ms. Guevara states in her petition, only certain officials may revoke an OSUP. Dkt. 1 ¶ 51. She argues that her OSUP was not revoked by an official with authority to do so. Dkt. 11 at 9–10.

The relevant regulation grants discretion to revoke release to an Executive Associate Commissioner or, in more limited circumstances, to a District Director. 8 C.F.R. 241.4(*l*)(2). Specifically, "[a] district director may also revoke release of an alien when, in the district director's opinion, revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner." *Id.*

Though Respondents do not provide any explanation for why they believe the OSUP revocation was signed by an official authorized to do so, 8 C.F.R. § 1.2 clarifies what "Director" means in § 241.4(l)(2):

> Director or district director prior to March 1, 2003, means the district director or regional service center director, unless otherwise specified. On or after March 1, 2003, pursuant to delegation from the Secretary of Homeland Security or any successive re-delegation, the terms mean, to the extent that authority has been delegated to such official: asylum office director; director, field operations; district director for interior enforcement; district director for services; *field office director*; service center director; or special agent in charge. *The terms also mean such other official, including an official in an acting capacity*, within U.S. Citizenship and Immigration Services, U.S. Customs and Border Protection, U.S. Immigration and Customs Enforcement, or other component of the Department of Homeland Security *who is delegated the function or authority above for a particular geographic district, region, or area.*

8 C.F.R. § 1.2 (emphasis added). Thus, the "Acting Field Office Director" is a "district director" for the purposes of § 241.4(l)(2) when he or she is "delegated the function or authority above for a particular geographic district, region, or area."

As stated above, Ms. Guevara's Notice of Revocation of Release was signed by Raymond Hernandez, who stated under oath that he was Acting *Deputy* Field Office Director at the time. The regulation does not give authority for deputy field office director—whether in an acting capacity or not—to revoke OSUPs. Mr. Hernandez states that he had "assumed" the duties of Acting Field Office Director, but there is no evidence in the record that he had been "delegated the function or authority" of Acting Field Office Director by anyone (much less whether that delegating person—if they exist—had the ability to delegate the authority to revoke OSUPs to Mr. Hernandez).

Additionally, there is no indication in the record that, even if it were established that Mr. Hernandez had authority to revoke OSUPs, he was of the opinion that revocation was in the public interest and circumstances did not reasonably permit referral of the case to the Executive Associate Commissioner. This is a necessary condition for a Field Office Director to have the authority to revoke an OSUP. He did not make a record of any such opinion in either the notice of revocation, dkt. 7-1 at 4–5, or his sworn declaration, dkt. 12-3.

In sum, Ms. Guevara has made a showing that she was released subject to an OSUP and that her release was not revoked by an official with authority or according to the process the law prescribes. Respondents have not shown otherwise. This leads the Court to an unavoidable conclusion: the federal respondents did not comply with the regulatory requirements when purportedly revoking Ms. Guevara's OSUP. Ms. Guevara is entitled to relief. The Court declines to discuss her other arguments.

C.  **Proper Remedy**

Ms. Guevara requests immediate release. This case is similar to *N.A.L.R. v. Bondi*, where petitioner demonstrated that following her initial arrest and release subject to an OSUP, her release was never revoked by any official with authority to do so or according to the prescribed legal

process. 2025 WL 2987239, at *3. Where, as here, revocation of petitioner's release and her current detention violate the APA and *Accardi* doctrine, both must be rescinded and set aside. *Id*. at *3 n.2 (collecting cases demonstrating that district courts around the country have ordered immediate release of noncitizens being detained without compliance with 8 C.F.R. § 241.4(*l*)).

### IV. Conclusion

Ms. Guevara's petition for a writ of habeas corpus is **granted**, and Ms. Guevara is ordered released forthwith from custody subject to her most recent order (and conditions) of supervision. The respondents are allowed until **March 9, 2026**, to certify to the Court that Ms. Guevara has been so released from detention.

Because the warden of the Clinton County Jail (Ms. Guevara's current place of detention) is not a party to this action, the Court **orders** her to **file within 24 hours** (1) a motion to add the warden of the Clinton County Jail as a respondent, and (2) a certification that she has served a copy of this Order on the warden.

Final Judgment will issue in a future order.

**IT IS SO ORDERED.**

Date: 3/5/2026

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Rania Attum
rania@attumlaw.com

R. Jeffrey Lowe
KIGHTLINGER & GRAY, LLP (New Albany)
jlowe@k-glaw.com

Shelese M. Woods
DOJ-USAO
shelese.woods@usdoj.gov